UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASHLEY WISCHOW,

    Plaintiff,

v

LUXOTTICA OF AMERICA INC.,
an Ohio Corporation, and ESSILOR
LABORATORIES OF AMERICA
INC., a North Carolina Corporation,

    Defendant.

Case No.
Hon:

James K. Fett (P39461)
Fett & Fields, P.C.
407 North Main Street, 2nd Floor
Ann Arbor, MI 48104
734-954-0100
Fax: 734-954-0762
jim@fettlaw.com
Attorney for Plaintiff

# PLAINTIFF'S COMPLAINT AND JURY DEMAND

Plaintiff, through counsel, Fett & Fields, P.C., states the following claims against Defendant:

**NATURE OF CLAIMS**

1. This is a lawsuit seeking money damages for sexual harassment and retaliation in violation of the Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq*., and disability discrimination pursuant to the Michigan Persons with Disabilities

Act, MCL § 37.1101, *et seq*.

## JURISDICTION, PARTIES, AND VENUE

2. Plaintiff invokes the jurisdiction of this Court pursuant to 28 U.S.C. §1332.

3. The events giving rise to this cause of action occurred in the Eastern District of Michigan.

4. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

5. Plaintiff Ashley Wischow is a citizen of Michigan and was a resident of, and employed by Defendant in, Wayne County, Michigan, during the events giving rise to this action

6. Defendant Luxottica of America, Inc., is an Ohio Corporation headquartered in Ohio.

7. Defendant Essilor Laboratories of America, Inc., is a North Carolina Corporation headquartered in Texas.

8. Both Defendants are subsidiaries of Essilor of America, Inc.

## FACTS

9. Plaintiff began her employment with Defendant on May 30, 2022, as a General Manager at Cherry Optical, located in Melvindale, Michigan.

10. Plaintiff performed her job duties in a satisfactory and commendable

manner and was subsequently promoted during her employment.

11. On or about May 7, 2024, Plaintiff traveled to Houston, Texas, for a business trip to explore a new opportunity as General Manager.

12. During a business dinner that evening with David Erickson, Regional Operations Director ("ROD"), Plaintiff was subjected to a series of unwelcome and inappropriate sexual comments by Erickson.

13. On information and belief, Erickson resided in Kentucky a the time of the events giving rise to this lawsuit.

14. Erickson told Plaintiff, among other things, "You are gorgeous," "Your eyes are the prettiest I've ever seen," "Why aren't you a model?" and "Stop playing with your hair like that. You're obviously flirting."

15. Erickson also stated, "My marriage is open… if you are interested, the door is open."

16. Plaintiff expressed discomfort with Erickson's remarks and asked to leave the dinner.

17. Erickson attempted to delay Plaintiff's departure by suggesting she have some water; however, Plaintiff returned to her hotel shortly thereafter.

18. On the morning of May 8, 2024, Erickson texted Plaintiff, asking, "Good morning... how are you feeling?"

19. Plaintiff responded that she was not feeling well due to Erickson's

3

inappropriate comments the night before.

20. Erickson responded by suggesting juice, offering Plaintiff his car, and inviting her to his hotel room with a wink emoji.

21. Feeling professionally obligated, Plaintiff agreed to lunch with Erickson later that day.

22. During lunch, Plaintiff told Erickson that his conduct the night before made her uncomfortable.

23. Erickson attempted to minimize his behavior, saying "Don't make it weird," "This will fall on both of us," and "I can retire in Belize," before laughing.

24. Plaintiff told Erickson she no longer believed the General Manager role in Houston was right for her.

25. Erickson apologized and promised to remain professional moving forward; Plaintiff accepted the apology but reiterated her personal boundaries.

26. That evening, Plaintiff joined Erickson and former General Manager Daniel Loomis for a drink after dinner.

27. Loomis later left, leaving Plaintiff alone with Erickson.

28. Erickson became emotional and discussed personal and family issues, and began crying.

29. Plaintiff recommended Erickson seek support through BetterHelp or similar counseling services.

30. Erickson thanked Plaintiff for "helping" him.

31. On or about June 4, 2024, during a GM Conference in New Orleans, Plaintiff attended a work outing on Bourbon Street with Erickson and others.

32. During this outing, Erickson again made inappropriate remarks, including "HR is the freakiest of them all," and claimed he had sexual relationships with HR employees.

33. Erickson also bragged about navigating a prior HR investigation and stated, "I'm untouchable."

34. Plaintiff excused herself from the conversation due to the offensive nature of Erickson's remarks.

35. On or about June 5, 2024, during the same conference, Erickson insisted that Plaintiff accompany him for pizza and drinks that evening.

36. Plaintiff declined multiple times, but Erickson continued to pressure her, stating there were "important things to discuss."

37. General Manager Wayne Mullins was present and witnessed Erickson's persistence and pressure toward Plaintiff.

38. Plaintiff apologized to Mullins and left with him.

39. Mullins later confirmed to Plaintiff that Erickson's behavior was inappropriate.

40. On June 6, 2024, Plaintiff asked another General Manager, Josh

5

Skonieczny, whether she should report Erickson's misconduct.

41. Skonieczny advised Plaintiff not to report the incidents unless she started seeing Erickson more frequently, and to say she preferred her husband accompany her to dinners.

42. Plaintiff did not report at that time due to fear of retaliation and Erickson's earlier statements that he had successfully manipulated past HR investigations.

43. On or about June 7, 2024, Skonieczny told Plaintiff that Erickson had previously confessed to HR issues and said, "If any woman ever went to HR again, I [Erickson] would bury them."

44. Skonieczny also confirmed to Plaintiff that Erickson had made comments about retiring in Belize.

45. Skonieczny stated, "I now know everything you said was true," and took steps to prevent a female employee from being sent to train with Erickson.

46. On June 9, 2024, Plaintiff was promoted to her new position in Texas.

47. On July 1, 2024, during a relocation trip to Houston, Plaintiff made efforts to avoid Erickson and made dinner plans with a sales representative to avoid being alone with him.

48. Erickson expressed irritation that Plaintiff "blew him off."

49. On July 2, 2024, following a lab visit, Erickson again asked Plaintiff to

dinner.

50. Plaintiff agreed and accompanied him to Moxie's restaurant.

51. During dinner, Erickson made inappropriate and disturbing comments, including stories about women inviting him to strip clubs, and statements such as "You are so pretty," "I would marry you tomorrow," and "The way you put on lip gloss is fucking sexy."

52. Erickson also made comments involving drugs, explaining "Molly" and "roofie," and joked about rape.

53. Plaintiff felt unsafe, returned to her hotel quickly, contacted her family, and booked an earlier return flight.

54. Plaintiff reported the July 2 incident to Human Resources the following morning.

55. In early July 2024, Plaintiff requested time off due to the psychological toll of the harassment, but her request was denied, allegedly due to a hurricane in Houston.

56. Despite her mental health distress, Plaintiff continued working overtime during this period.

57. On or about July 19, 2024, Erickson was terminated by the company.

58. On or about July 22, 2024, Erickson used a fake Gmail account to access the company's SharePoint platform.

59. Plaintiff and her family moved to Texas on July 32, 2024, to assume her new position.

60. On August 6, 2024, Plaintiff began a new onsite assignment with new employees. That day, the production boards had been edited to say: "[Plaintiff] is a liar. Don't trust her," and included a count of Plaintiff's alleged "lies."

61. Plaintiff's new Regional Operations Director, Scott Pickering, immediately reported the incident to HR.

62. On August 7, 2024, Plaintiff requested time off and additional security measures due to ongoing safety concerns, including doors that would not lock.

63. Defendant denied Plaintiff's request for any resources outside the workplace and failed to take corrective steps regarding her security concerns.

64. That same day, Plaintiff met with the new Regional Director and Vice President of North America and was instructed not to disclose anything about Erickson to employees.

65. August 6, 2024, was the last day Plaintiff was physically present at the lab.

66. On or about September 1, 2024, Plaintiff was placed on workers' compensation due to psychological trauma related to the harassment.

67. Plaintiff has been diagnosed with severe PTSD and has barely been able to leave her house since.

68. In November 2024, Plaintiff's husband discovered that Erickson had sent him a Facebook message request on July 19, 2024, which he subsequently deleted.

69. On January 18, 2025, Erickson sent Plaintiff a direct text message stating: "I heard you never started in Houston... hopefully you got really sick... deadly ill... you deserve it... fuck you..."

70. On February 26, 2025, Defendant informed Plaintiff that they were considering filling her position if she did not return from medical leave by mid-April 2025.

71. In response, Plaintiff requested reasonable accommodation for her disability, including remote work and a reduced schedule (from eight to six hours per day).

72. Defendant denied Plaintiff's request to work remotely, claiming her job could not be done offsite, despite allowing her to work remotely for approximately three months during relocation.

73. Defendant also denied Plaintiff a transfer to a remote position, despite initially offering this as an accommodation.

74. Defendant only contacted Plaintiff through her work phone, despite knowing she was on medical leave and using her personal phone for communications.

9

75. Plaintiff's requests for accommodation were delayed for more than five weeks, during which no adequate resolution or support was provided.

76. Defendant's denial of reasonable accommodations and its threat to replace Plaintiff's job while she was on medical leave constitute disability discrimination and unlawful retaliation under applicable law.

77. Plaintiff currently is disabled by severe emotional distress, Defendant has denied her request for accommodation and her job status remains uncertain.

78. Plaintiff has filed for workers' compensation benefits in Michigan and plans to move back to the state as soon as she is able.

## COUNT I
## HOSTILE WORK ENVIRONMENT
## MCL § 37.2202

79. Plaintiff incorporates by reference the preceding paragraphs.

80. Defendant subjected Plaintiff to unwelcome sexual communication and conduct.

81. The unwelcome communications and conduct were intended to, and in fact did, substantially interfere with Plaintiff's employment and created an intimidating, hostile and offensive work environment.

82. The unwelcome communication and conduct were sufficiently severe and pervasive so as to create a sexually hostile environment.

83. Defendant knew, or should have known, about the sexual harassment and allowed it to continue.

84. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff suffers depression, emotional and physical distress, mental anguish, loss of reputation, humiliation, embarrassment, and the associated physical effects.

WHEREFORE, Plaintiff requests judgment against Defendant for:

    a.    Economic damages;

    b.    Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

    c.    Costs, interest and reasonable attorney fees as provided by MCL § 37.8202; and

    d.    Such other equitable relief as the Court deems just.

## COUNT II
## HOSTILE WORK ENVIRONMENT – QUID PRO QUO
## MCL § 37.2202

85. Plaintiff incorporates by reference the preceding paragraphs.

86. Defendant subjected Plaintiff to unwelcome sexual communications and conduct.

87. Defendant explicitly or implicitly made Plaintiff's submission to such conduct or communication a term or condition to obtain employment or used Plaintiff's

11

submission to or rejection of such conduct or communication as a factor in a decision affecting the Plaintiff's employment.

88. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff suffers depression, emotional and physical distress, mental anguish, loss of reputation, humiliation, embarrassment, and the associated physical effects.

WHEREFORE, Plaintiff requests judgment against Defendant for:

a. Economic damages;

b. Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

c. Costs, interest and reasonable attorney fees as provided by MCL § 37.8202; and

d. Such other equitable relief as the Court deems just.

## COUNT III
## RETALIATION
## MCL § 37.2701

89. Plaintiff incorporates by reference the preceding paragraphs.

90. Plaintiff engaged in protected activity by reporting and opposing sexual harassment.

91. Defendant was aware of Plaintiff's protected activity.

92. Defendant failed to accommodate Plaintiff's PTSD and terminated Plaintiff because of her protected activity.

93. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff suffers depression, emotional and physical distress, mental anguish, loss of reputation, humiliation, embarrassment, and the associated physical effects.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant for:

    a. Economic damages;

    b. Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

    c. Costs, interest and reasonable attorney fees as provided by MCL § 37.8202; and

    d. Such other equitable relief as the Court deems just.

## COUNT IV
## DISABILITY DISCRIMINATION
## MCL § 37.2701

94. Plaintiff incorporates by reference the preceding paragraphs.

95. Plaintiff incorporates by reference the preceding paragraphs.

96. Plaintiff is a disabled person as defined in the Michigan Persons with Disabilities Civil Rights Acts, MCLA 37.1101, *et. seq*., because (1) she has a determinable physical and mental characteristics which substantially limits one or more major life activities and is unrelated to her ability to perform her job and (2) Defendant regarded her as a person with a determinable physical and mental

characteristic which substantially limits one or more major life activities and which is unrelated to her ability to perform her job.

97. Defendant subjected Plaintiff to adverse actions.

98. Plaintiff's disability was a factor which made a difference in Defendant's decision to subject Plaintiff to the adverse actions.

99. Defendant's actions on this basis violates the Michigan Persons with Disabilities Civil Rights Act, MCLA 37.1101, *et seq*.

100. As a proximate result of Defendant's unlawful conduct against Plaintiff as described above, Plaintiff has sustained, and will continue to sustain, injuries, and damages, including but not limited to, loss of earnings and earning capacity; loss of career opportunity; humiliation, outrage, embarrassment, mental and emotional distress and the physical manifestations of those injuries.

WHEREFORE, Plaintiff requests judgment against Defendant for:

    a. Economic damages;

    b. Non-economic damages to compensate for the mental and emotional distress, outrage, and humiliation she has suffered, and continues to suffer, as a result of Defendant's illegal actions;

    c. Costs, interest and reasonable attorney fees as provided by MCL § 37.8202; and

    d. Such other equitable relief as the Court deems just.

                                            Respectfully submitted,

                                            */s/ James K. Fett*
                                            By: James K. Fett (P39461)
                                            Fett & Fields, P.C.
                                            407 North Main Street, 2nd Floor
                                            Ann Arbor, MI 48104
                                            734-954-0100
                                            jim@fettlaw.com
Dated: August 11, 2025              Attorneys for Plaintiff

## **JURY DEMAND**

Plaintiff demands trial by jury.

                                            Respectfully submitted,

                                            */s/ James K. Fett*
                                            By: James K. Fett (P39461)
                                            Fett & Fields, P.C.
                                            407 North Main Street, 2nd Floor
                                            Ann Arbor, MI 48104
                                            734-954-0100
                                            jim@fettlaw.com
Dated: August 11, 2025              Attorneys for Plaintiff